1  RUSSELL P. BROWN (SBN: 84505)
   GEORGE P. SOARES (SBN: 213996)
2  GORDON & REES LLP
   101 W. Broadway, Suite 2000
3  San Diego, CA 92101
   Telephone: (619) 696-6700
4  Facsimile: (619) 696-7124

5  Attorneys for Defendant
   GREAT LAKES REINSURANCE (UK) PLC
6  erroneously sued as THE GREAT LAKES REINSURANCE COMPANY

7

FILED

08 FEB 28 AM 11: 53

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: __CP__ DEPUTY

8              UNITED STATES DISTRICT COURT

9            SOUTHERN DISTRICT OF CALIFORNIA

10

11  RICHARD BARTLETT and MARLENE)   CASE NO. 08 CV 0377 JAH CAB
    BARTLETT,
12                                )
              Plaintiffs,          )   **GREAT LAKES REINSURANCE**
13                                )   **(UK) PLC'S NOTICE OF**
    vs.                            )   **REMOVAL OF CIVIL ACTION**
14                                )   **[28 U.S.C. §§ 1332, 1441, and 1446]**
    DOUGLAS K. S. MITH MARINE     )
15  INSURANCE SERVICES, INC.; THE )
    GREAT LAKES REINSURANCE       )   Complaint Filed: November 19, 2007
16  COMPANY, and DOES 1 through 30,)
                                  )
17            Defendants.         )
                                  )
18

19  TO THE JUDGES AND CLERK OF THE UNITED STATES DISTRICT

20  COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:

21        PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(a), 1441(a)

22  1446, defendant Great Lakes Reinsurance (UK) PLC ("Underwriters") removes

23  this action from the Superior Court of the State of California for the County of San

24  Diego to the United States District Court for the Southern District of California.

25  This Court has original jurisdiction of this action under 28 U.S.C. § 1332(a)

26  because there is complete diversity of citizenship between plaintiffs Richard

27  Bartlett and Marlene Bartlett (collectively "Plaintiffs") on the one hand, and

28

*Gordon & Rees LLP*
*101 West Broadway, Suite 2000*
*San Diego, CA 92101*

- 1 -

CR

1    Underwriters and the amount in controversy exceeds the sum of $75,000, exclusive

2    of interests and costs.

3        In support of this Notice of Removal, Underwriters further state:

4        1.    Plaintiffs commenced this action on November 19, 2007 by filing a

5    complaint for: (1) negligence; (2) breach of contract; and (3) breach of the implied

6    covenant of good faith and fair dealing in the Superior Court of the State of

7    California for the County of San Diego (the "Complaint").  Upon the filing of the

8    Complaint the case was assigned case number 37-2007-00082030-CU-IC-CTL.  A

9    true and correct copy of the Complaint is attached hereto as Exhibit 1.

10        2.    The Complaint and a summons on the Complaint were first served

11    upon Underwriters on February 11, 2008.  A true and correct copy of the summons

12    on Complaint is attached hereto as Exhibit 2.

13        3.    Underwriters does not have any information suggesting that defendant

14    Douglas K. Smith Marine Insurance Services, Inc. has been served.  Moreover,

15    defendants designated as Does 1 through 30 are fictitious defendants, are not

16    parties to this action, have not been served, and are to be disregarded for purposes

17    of this removal.  28 U.S.C. § 1441(a).

18        4.    Based on the allegations of the Complaint, Plaintiffs are and was at

19    the time of the filing of this action and of this Notice of Removal were citizens of

20    the State of Arizona.  [Complaint, ¶ 1.]

21        5.    At the time of the filing of this action and this Notice of Removal,

22    Underwriters was and is a Public Limited Company incorporated in the United

23    Kingdom.  Its headquarters office is located at Plantation Place, 30 Fenchurch

24    Street, London EC3m 3AJ United Kingdom. Consistent with *Tosco Corp. v.*

25    *Communities for a Better Environment*, 236 F.3d 499 (9th Cir. 2001), and

26    *Industrial Techtonics, Inc. v. Aero Alloy*, 912 F.2d 1090 (9th Cir. 1990), the

27    "substantial predominance" of defendant Underwriter's business activities occur in

28    the United Kingdom and not Arizona or California: (i) virtually all personnel who

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

- 2 -

1  underwrite policies reside in the United Kingdom; (ii) a substantial predominance

2  of Underwriters income is derived from policies issued in the United Kingdom;

3  (iii) Underwriters policies are issued solely from the United Kingdom.  Therefore,

4  for purposes of diversity jurisdiction Underwriters has its principal place of

5  business in the United Kingdom, and not California or Arizona.  Therefore,

6  Underwriters are a citizen of a foreign state.

7       7.    Pursuant to 28 U.S.C. § 1441(b), diversity suits are removable "if

8  none of the parties in interest properly joined and served as Defendants is a citizen

9  of the State in which such action is brought." Because Underwriters are a citizen of

10  the United Kingdom- and not a citizen of California- removal is proper.

11       8.    Plaintiffs allege in the complaint that they have suffered damages in

12  excess of $332,000 [Complaint, ¶ 27.]  The amount in controversy in this action is

13  therefore in excess of $75,000, exclusive of interests and costs.

14       9.    This action is, therefore, a civil action of which this Court has original

15  jurisdiction under 28 U.S.C. § 1332(a), and one which may be removed by

16  defendant Underwriters to this Court pursuant to 28 U.S.C. §§ 1441 and 1446, in

17  that it is a civil action wherein the matter in controversy exceeds $75,000

18  (exclusive of interest and costs) and is between citizens of different states or

19  citizens of foreign states.

20       10.   This Notice of Removal is timely filed pursuant to 28 U.S.C. §

21  1446(b), which provides that, "[t]he notice of removal of a civil action or

22  proceeding shall be filed within thirty days after the receipt by the defendant,

23  through service or otherwise, of a copy of the initial pleading setting forth the

24  claim for relief upon which such action or proceeding is based. . . ."  In order to

25  trigger the thirty-day removal period, receipt of the summons and Complaint must

26  be by proper service.  *See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526

27  U.S. 344, 354 (1999).  This Notice of Removal was filed within thirty days of

28  service of the summons and Complaint upon Underwriters.

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

- 3 -

11.    Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon defendant Underwriters, which papers include the summons and Complaint, is attached hereto as Exhibits 1 and 2.

12.    Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being filed with the Clerk of the San Diego County Superior Court.

13.    Pursuant to 28 U.S.C. § 1446(d), defendant Underwriters is providing this Notice of Removal to Plaintiffs.

WHEREFORE, Underwriters hereby remove this action from the Superior Court of the State of California for the County of San Diego to this Court, and requests that this Court exercise jurisdiction over all further proceedings in this action.

Dated: February 28, 2008

GORDON & REES LLP

By: _____
    Russell P. Brown
    George P. Soares
    Attorneys for Defendant GREAT
    LAKES REINSURANCE (UK)
    PLC erroneously sued as THE GREAT
    LAKES REINSURANCE COMPANY

Gordon & Rees LLP
101 West Broadway, Suite 2000
San Diego, CA 92101

TLDA/1039395/5451452v.1

- 4 -

NOTICE OF REMOVAL

**EXHIBIT 1**

HAWKINS, PRATA & DALEY LLP
Roger E. Hawkins (State Bar No. 45315)
Todd A. Daley (State Bar No. 168742)
707 Wilshire Boulevard
Suite 1825
Los Angeles, California 90017
Telephone: (213) 622-5600
Facsimile: (213) 622-5623

Attorneys for Plaintiffs RICHARD BARTLETT
and MARLENE BARTLETT

FILED
CIVIL BUSINESS OFFICE 9
CENTRAL DIVISION

2007 NOV 19 A II: 45

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF SAN DIEGO - CENTRAL DIVISION

| | |
|---|---|
| RICHARD BARTLETT and MARLENE BARTLETT, | Case No. 37-2007-00082030-CU-IC-CTL |
| Plaintiffs, | COMPLAINT FOR: |
| vs. | 1.  NEGLIGENCE<br>2.  BREACH OF CONTRACT<br>3.  BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING |
| DOUGLAS K. SMITH MARINE INSURANCE SERVICES, INC.; THE GREAT LAKES REINSURANCE COMPANY, and DOES 1 through 30, | |
| Defendants. | JURY TRIAL DEMANDED |

Plaintiffs, Richard and Marlene Bartlett (singly and collectively referred to herein as "Bartletts"), allege and complain on their own behalves, and on behalf of all other persons, whether individual, corporate or otherwise, with any ownership interest or lien interest in the hereinafter referenced vessel, *S/V STARLET*, as their respective interests may appear. Without limiting the generality of the foregoing, the said persons include Key Bank USA, a Loss Payee under the hereinafter-referenced Great Lakes' Policy.

## GENERAL ALLEGATIONS

1.     The Bartletts were and now are individuals and residents of Maricopa County, Arizona.

///

1

COMPLAINT

2.    At all times herein mentioned, the Bartletts were owners of the vessel, *S/V STARLET*, a 2003 Catalina "470" fiberglass sloop, Documentation No. 1165787.

3.    At all times herein mentioned, the *S/V STARLET* was seaworthy and manned by an adequate crew including, in addition to the Bartletts, Mary Katherine Hannon ("Hannon") and James Edward Marienthal ("Marienthal").

4.    Defendant, Douglas K. Smith Marine Insurance Services, Inc. ("Smith Marine") was and now is a corporation organized and existing under the laws of California, and engaged in the sole business of placing marine insurance for its clients, including the Bartletts, in San Diego County, California.

5.    At all times herein mentioned, Smith Marine held itself to the public, in general, and to the Bartletts, in particular, as an insurance broker having professional expertise and specializing in providing advice to its clientele and placing marine insurance coverage.

6.    Smith Marine placed insurance coverage for the Bartletts and on the *S/V STARLET* with, *inter alia*, The Great Lakes Reinsurance Company ("Great Lakes"), pursuant to Policy No. 200/658/72833 ("Great Lakes' Policy"), in the Central Division of the San Diego Superior Court.

7.    At all times herein mentioned, Smith Marine provided the Bartletts with insurance coverage information, made marine insurance coverage recommendations, and placed insurance coverage, including hull coverage, on the *S/V STARLET*.

8.    During the period February 10, 2006 through and including November 20, 2006, Smith Marine engaged in a pattern and practice of obtaining, *inter alia*, hull coverage on the *S/V STARLET* for those locales where the Bartletts operated the said vessel.

9.    Great Lakes is, and at all time herein mentioned was, a corporation offering marine hull insurance in California. Great Lakes issued to the Bartletts a policy of insurance, Policy No. 200/658/72833, with effective coverage dates from February 10, 2006 to February 10, 2007, in the Central Division of the San Diego Superior Court. A copy of said policy is attached hereto, as Exhibit "A".

///

2

COMPLAINT

10.    The Bartletts are informed and believe, and based on such information and belief allege, that Smith Marine is a duly authorized agent of Great Lakes and, in doing the things hereinafter mentioned, was acting within the course and scope of Great Lakes' agency, service and employment.

11.    The Bartletts are ignorant of the true names and capacities of Doe Defendants 1 through 30, inclusive, and therefore sue these defendants by such fictitious names. The Bartletts will seek to amend this Complaint alleging the true names and capacities of said Doe Defendants, when ascertained. The Bartletts are informed and believe, and based on such information and belief allege, that each of the fictitiously-named defendants are negligently or in some other manner legally responsible for the occurrences herein alleged and that the Bartletts' damages herein alleged were proximately caused by such defendants.

12.    The Bartletts are informed and believe, and based on such information and belief allege, that at all times herein mentioned each defendant was the principal, actual agent, ostensible agent, co-conspirator or employee of each other defendant, and in doing the things hereinafter alleged, was acting within the course and scope of said agency, service and employment.

13.    This court is the proper court because at least one defendant is headquartered in its jurisdictional area.

## I. FIRST CAUSE OF ACTION

### (Negligence Against Douglas K. Smith Marine Insurance Services, Inc. and Does 1 through 15)

14.    The Bartletts incorporate by reference paragraphs 1 through 12, inclusive, of its Complaint as though fully set forth at length.

15.    Prior to and during the term of the Great Lakes' Policy, the Bartletts provided information and documentation concerning their travel plans and crew information to Smith Marine for the purpose of, *inter alia*, ensuring that they and the *M/V STARLET* were fully insured during the operation of said vessel for the term of the Great Lakes' Policy.

3

COMPLAINT

HAWKINS, MELA & DALEY LLP
707 WILSHIRE BOULEVARD, SUITE 1825
LOS ANGELES, CALIFORNIA 90017
(213) 622-5600   FAX: (213) 622-5623

16.     On November 20, 2007, the Bartletts were in route to Guanaja, a Honduras island. Due to heavy seas and storm conditions that threatened the Bartletts, the crew of the *S/V STARLET* and the *S/V STARLET*, and further due to physical damage suffered by the *S/V STARLET* by the seas and storm, the Bartletts broadcast a radio distress call. The Bartletts are informed and believe that, in response to their transmission, the U.S. Coast Guard ordered the freighter, *M/T STOLT TAURUS*, to divert its course and rescue the Bartletts and the vessel's crew. Once the *M/T STOLT TAURUS* responded, and while in the lee of the said freighter, the Bartletts -- assisted by members of the crew of the *M/T STOLT TAURUS*, deployed the *S/V STARLET'S* anchor in area of approximately 90-feet water depth. Having secured the *S/V STARLET* as best they could under adverse sea and weather conditions, the Bartletts, along with Hannon and Marienthal, disembarked the *S/V STARLET* onto the *M/T STOLT TAURUS*. Once safely aboard the *M/T STOLT TAURUS*, the Bartletts, Hannon and Marienthal were transported to nearby Port Moin, in Costa Rica; however, due to unrelenting storm conditions, the *M/T STOLT TAURUS* was not permitted to dock. As a result, it was necessary for the Bartletts, Hannon and Marienthal to remain on board the freighter for three days, before they could disembark. Still due to unrelenting storm conditions, it was several additional days before the Bartletts were able to ascertain that the *S/V STARLET* had grounded, in Honduras. Thereafter, the *S/V STARLET* was declared a constructive total loss.

17.     At the time of the aforementioned rescue, the *S/V STARLET* was near Costa Rica and within the navigational limits set forth in the Great Lakes' Policy.

18.     At the time the *S/V STARLET* grounded and rendered a constructive total loss, the vessel was shipwrecked in Honduras, within the navigational limits set forth in the Great Lakes' Policy.

19.     Subsequently, the Bartletts, through Smith Marine, presented a claim for the loss of the *S/V STARLET* to Great Lakes, pursuant to the Great Lakes' Policy.

20.     On or about December 29, 2006, in continuing conformity with the terms and conditions of the policy, Richard Barlett provided a recorded statement concerning the claim to T.L Dallas (Special Risks) Ltd. ("T.L Dallas"). The Bartletts are informed and believe,

4

COMPLAINT

1    and upon such information and belief allege, that T L. Dallas, at all times herein mentioned,

2    acted as an underwriting agent and claims manager for Great Lakes.

3           21.    On or about February 16, 2007, T L Dallas wrote the Bartletts:

4    "Underwriters (Great Lakes) are hereby tendering the premium in full and rescinding the (Great

5    Lakes') Policy." A true and correct copy of T L Dallas' letter is attached hereto, as Exhibit "B".

6           22.    Great Lakes' denied coverage on the grounds that "the Policy's

7    navigational warranty prohibited the Vessel from entering Columbian waters; that the Barletts

8    "represented to Underwriters that (they) would not travel into Columbian waters;" that "(y)our

9    policy is subject to the duty of utmost good faith, known as '*uberrimae fidei*' (which) "duty is

10   also strengthened by your policy containing the a term (sic) to the effect that the Policy is void

11   *ab initio*. Underwriters are hereby tendering the premium in full and rescinding the Policy."

12   More specifically, Great Lakes contended that "(i)t is undisputed that you took the Vessel into

13   Columbian waters. Therefore, you made material misrepresentations to Underwriters that

14   would entitle them to render the Policy void *ab initio*. You also breached the trading warranty.

15   Underwriters hereby are tending (sic) the premium in full and declare the Policy rescinded."

16          23.    In addition, Great Lakes reserved its right to deny coverage on two

17   grounds. First, Great Lakes contended that the *S/V STARLET* "was lost only after you (the

18   Barletts) abandoned the vessel". T L Dallas advised that, "(w)hen your agent originally

19   reported the loss he referred the vessel (sic) as having been abandoned by you. Therefore, the

20   Policy does not provide coverage for the loss."

21          Second, Great Lakes contended that the Bartletts "warranted in the Policy that

22   the Vessel would remain seaworthy at all times," with the Great Lakes' Policy defining "the

23   term 'seaworthy' to include the provision of an adequate and experienced crew." Concluding

24   "that the crew was inadequate prior to the loss, (the) Underwriters reserve their rights to deny

25   coverage on this issue."

26          24.    Prior to November 20, 2006, the Bartletts advised Smith Marine that the

27   *S/V STARLET* might operate in Columbian waters; however, Smith Marine negligently failed to

28   inform the Bartletts that such operation would void coverage, under the Great Lakes' Policy, *ab*

COMPLAINT

1  *initio*, or otherwise, even if the loss occurred within the navigational limits of the Great Lakes'

2  Policy. Had Smith Marine, and Doe Defendants 1 through 15, informed the Bartletts that

3  operation of the *S/V STARLET* in Columbian waters would void coverage under the Great

4  Lakes' Policy, *ab inito*, or otherwise, the *S/V STARLET* would not have been operated in

5  Columbian waters.

6         25.    The Barletts relied on Smith Marine, and Doe Defendants 1 through 15,

7  to ensure that they and the *S/V STARLET* were fully insured during the operation of their vessel.

8  Nonetheless, Smith Marine negligently failed to procure insurance coverage to protect the

9  Bartletts and the *S/V STARLET* for the subject loss.

10         26.    As a proximate result of the negligent acts and professional errors and

11  omissions of Smith Marine, and Doe Defendants 1 through 15, as alleged herein, Great Lakes

12  declined coverage for the subject loss.

13         27.    As a direct and proximate result of the negligent acts and professional

14  errors and omissions of Smith Marine, and Doe Defendants 1 through 15, as alleged herein, the

15  Bartletts have suffered injury and damage in an amount in excess of $332,000, all subject to

16  proof at trial.

17

18                **II. SECOND CAUSE OF ACTION**

19  **(Breach of Contract against Great Lakes Reinsurance Company and Does 10 through 30)**

20         28.    THE BARTLETTS incorporate by reference paragraphs 1 through 27 and

21  paragraphs 32 through 38 of their Complaint as though fully set forth at length.

22         29.    At all times herein mentioned, the Bartletts have performed all conditions

23  reasonably required of them under the Great Lakes' Policy.

24         30.    Great Lakes, and Doe Defendants 10 through 30, and each of them,

25  breached their obligation under the insurance contract, and acted in violation of California

26  Insurance Code §790.03(h), with the Bartletts by:

27  ///

28  ///

HAWKINS, PRATA & DALEY LLP
707 WILSHIRE BOULEVARD, SUITE 1825
LOS ANGELES, CALIFORNIA 90017
(213) 622-5600   FAX: (213) 622-5623

6

COMPLAINT

HAWKINS, PRATA & DALEY LLP
707 WILSHIRE BOULEVARD, SUITE 1825
LOS ANGELES, CALIFORNIA 90017
(213) 622-5600   FAX: (213) 622-5623

a. Failing to pay the Bartletts' damages and loss claim once liability was clear and the loss determined to have occurred within the Navigational limits of coverage under the Great Lakes' Policy;

b. Failing to investigate the Bartletts' loss claims under the insurance contract in a reasonable and prompt manner;

c. Misrepresenting to the Bartletts that, by its terms, a breach of the navigational limits of the Great Lakes' Policy voided coverage *ab initio*, to avoid payment of a covered claim;

d. Rescinding the Great Lakes' Policy without valid grounds;

e. Falsely accusing the Bartletts of failing to operate a seaworthy vessel and/or abandoning the vessel and/or breaching the Navigational limits of the Great Lakes' Policy to avoid payment of their claim;

f. Notwithstanding its representations to the contrary, failing to tender the premium in full, or in part or at all when Great Lakes rescinded the Great Lakes' Policy; and

g. Forcing the Bartletts to incur costs, including attorney's fees, in order to receive the benefits under their policy; and

31. As a result of the breach of contract by defendants Great Lakes, and Doe Defendants 10 through 30, and each of them, the Bartletts have been damaged in a sum in excess of $332,000, all subject to proof at trial, including:

a. Loss of Great Lakes' Policy benefits for the total loss of the *S/V STARLET* in excess of $332,000; and

b. Costs, including attorney's fees, to recover benefits under the policy.

///
///
///

7

COMPLAINT

## III. THIRD CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against

### Great Lakes Reinsurance Company and Does 10-30.)

32.    The Bartletts incorporate by reference paragraphs 1 through 31, inclusive, of their Complaint as though fully set forth at length.

33.    In California, every contract of insurance has an implied covenant of good faith and fair dealing.

34.    At all times herein mentioned, the Bartletts met their implied obligations to Great Lakes under the implied covenant of good faith and fair dealing.

35.    Great Lakes, and Doe Defendants 10 through 30, breached said defendants' duty of good faith and fair dealing towards the Bartletts by, *inter alia*:

    a.    Failing to conduct a full and complete investigation into the facts and circumstances of the claim asserted by the Bartletts for the loss of the *S/V STARLET* but, rather, conducting an "investigation" designed to justify avoid coverage under the Great Lakes' Policy;

    b.    Failing to pay the Bartletts' loss claim once it became clear the *S/V STARLET* was lost within the navigational limits of coverage under the Great Lakes' Policy;

    c.    By mischaracterizing and misrepresenting the terms, conditions and exclusions of the Great Lakes' Policy so as to deny coverage when, in fact, coverage existed;

    d.    By unreasonably refusing to fulfill its obligations to the Bartletts under Great Lakes' Policy;

    e.    By failing to abide by the rules promulgated by the California Insurance Commissioner and by engaging in unfair claims settlement practices in violation of Section 790.03(h) of the California Insurance Code;

8

COMPLAINT

HAWKINS, PRATA & DALEY LLP
707 WILSHIRE BOULEVARD, SUITE 1825
LOS ANGELES, CALIFORNIA 90017
(213) 622-5600   FAX: (213) 622-5623

f.  By rescinding the Great Lakes' Policy *ab initio*, on or about February 16, 2007 and representing that the premium was tendered in full, even though said premium was never tendered, in whole or in part or at all;

g.  On information and belief, Great Lakes' breaching its duty of good faith and fair dealing owed to the Bartletts by other acts or omissions of which the Bartletts are presently unaware and which will be shown according to proof at trial; and

e.  By compelling the Bartletts to initiate litigation to obtain benefits due under the Great Lakes' Policy;

36.  The bad faith conduct undertaken by Great Lakes, and Doe Defendants 10 through 30, constitute a continuing tort proximately causing the Bartletts' damage and harm.

37.  As a direct and proximate result of the bad faith conduct of Great Lakes, and Doe Defendants 10 through 30, the Bartletts have suffered, and will continue to suffer in the future, damages under the Great Lakes Policy, plus interest, in an amount to be determined at trial.

38.  As a further direct and proximate result of the bad faith conduct of Great Lakes, and Doe Defendants 10 through 30, the Bartletts have been obligated to expend and incur liability for costs of suit, attorney's fees and related expenses in an amount not yet fully ascertained, but subject to proof at trial.

WHEREFORE, the Bartletts pray for judgment against defendants, and each of them, as follows:

1.  For damages in excess of $332,000, together with interest thereon at the legal rate from and after November 20, 2006, until paid;

2.  For costs of suit herein incurred;

3.  For reasonable attorney's fees and costs;

///

9

COMPLAINT

1        4.    For such other and further relief as the court may deem proper.

2

3    DATED: November 16, 2007

4                        HAWKINS, PRATA & DALEY LLP

5

6                  By

7                          Roger E. Hawkins
                      Todd A. Daley

8             Attorneys for Plaintiffs, RICHARD BARTLETT
         and MARLENE BARTLETT

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HAWKINS, PRATA & DALEY LLP
707 WILSHIRE BOULEVARD, SUITE 1825
LOS ANGELES, CALIFORNIA 90017
(213) 622-5600   FAX: (213) 622-5623

10

COMPLAINT

# EXHIBIT "A"



**TLDallas**
*Insurance since 1919*

Insurance Brokers
Marine Underwriting Agents
Credit Insurance Specialists

# COVER NOTE

## Policy No: 200/658/ 72833

T L Dallas (Special Risks) Ltd
5-6 Dalesway House
South Hawksworth Street
Ilkley LS29 9LA
Telephone +44 (0)1943 811000
Fax +44 (0)1943 601854/601875

In accordance with your instructions we have effected the following cover on your behalf subject to the terms and conditions in the policy wording and endorsements attached.

| Assured : | Producer : |
|---|---|
| Marlene & Rick Bartlett<br>15850 N Thompson Park<br>Pkwy #1105<br>Scottsdale<br>AZ 85260 | **DOUGLAS K. SMITH MARINE INSURANCE SERVICES, INC.**<br>1110 SCOTT STREET<br>SAN DIEGO, CA 92106<br>(619) 222-2560 |

| | | | |
|---|---|---|---|
| **Vessel Name:** | Starlet | **Model:** | Auxiliary Sail |
| **Year:** | 2004 | **Maker:** | Catalina |
| **ID Number:** | CTYY0125G304 | **Length:** | 47 ' |
| **Engines:** | Diesel | **Type:** | Yanmar 75hp |

**Period of Cover:** With effect from February 10, 2006 00.01 LST to   February 10, 2007 00.01 LST

### Cover and Respective Insured Limits:

| Section: | Sum Insured: | Deductible: |
|---|---|---|
| A) Hull | 332,000 | 6,640 |
| Tender | Not Covered | |
| Towing | Not Covered | |
| B) P + I | 500,000 | 500 |
| Crew Liability | Not Covered | |
| Commercial Passenger Liability | Not Covered | |
| Owner Operator | Not Covered | |
| C) Medical Payments | 5,000 | 100 |
| D) Uninsured Boaters | 25,000 | 500 |
| E) Trailer | Not Covered | |
| F) Personal Property | 5,000 | 500 |

**Total Premium :**   US$ 6080.00 C.R.O. + US$25 Certificate Fee.

In the event of cancellation by the Assured minimum of 25% of premium deemed earned.
All fees earned at inception.

Member of the British Insurance
Brokers' Association

## Continuation Cover Note for Policy No: 200/658/72833

**Laid Up Period :** None

**Navigational Limits :** From California to Florida and East Coast USA, via West Coast USA, West Coast Central America, Panama Canal and the Caribbean (excluding Cuba, Colombia and Haiti) - Not to exceed 250 miles offshore.

**Conditions :** as per TLD/5/PPO

**Warranties:** Warranted Private and Pleasure use only.

**Endorsements :** None

**Special Warranties or Conditions :** Trip AP $665 included in premium and deemed fully earned from inception.

Excluding all and any loss or losses arising from or caused by a Named or Numbered Windstorm whilst the Insured Vessel is between 12 degrees 40 minutes North and 23 degrees 50 minutes North by 55 degrees West and 87 degrees West (the "BOX") from 1st July to 1st November, both days inclusive.


**Security as approved and agreed by you:**

100% Great Lakes
Reinsurance (UK) plc per
Belmarine SA contract no:
200/658

---

**Loss Payee :** Key Bank USA, 4910 Tiedeman Road, Brooklyn, OH 44144

---

**Date :** Friday, February 17, 2006 .................................................................

For and on behalf of Participating Underwriters



**TLDallas**
*Insurance since 1919*

Insurance Brokers
Marine Underwriting Agents
Credit Insurance Specialists

T L Dallas (Special Risks) Ltd
5-6 Dalesway House
South Hawksworth Street
Ilkley LS29 9LA
Telephone +44 (0)1943 811000
Fax +44 (0)1943 601854/601875

# POLICY ENDORSEMENT

**Endorsement Number :    2**

Attaching to and forming part of policy number : 200/658/72833

| Assured : | Producer: |
|---|---|
| Marlene & Rick Bartlett<br>15850 N. Thompson Peak<br>Pkwy #1105<br>Scottsdale<br>AZ 85260 | **DOUGLAS K. SMITH MARINE<br>INSURANCE SERVICES, INC.**<br>1110 SCOTT STREET<br>SAN DIEGO, CA 92106<br>(619) 222-2560 |

It is hereby noted and agreed that with effect from : February 10, 2006

Assured's address amended as shown above.

All other terms and conditions remain unaltered.

Date:   March 03, 2006

.................................................
Signed in England for and on behalf of
Participating Underwriters.

Member of the British Insurance
Brokers' Association
Registered Number 952756

## PRIVATE AND PLEASURE YACHT INSURING AGREEMENT WORDING

### 1. DEFINITIONS

a) 'You and your' refer to the insured named on the declaration page and any person who possesses any legal or beneficial interest in any corporation, trust or entity either declared as the owner of the scheduled vessel or as an additional assured.

b) 'We, us and our' refer to the insurers named on the declaration page or accompanying schedule of insurers.

c) 'Covered person' means you, and/or any person detailed on your application form which has been submitted and approved by us, provided that person has been declared to us as an operator of the scheduled vessel. This does not include either a paid captain and/or crew, or a person or organisation, or their employee or agent, operating a marina, boatyard, yacht club, charter operation, sales agency, refuelling dock or similar organisations, unless you have our agreement in writing to the contrary.

d) 'Scheduled vessel' means the vessel described on the declaration page, including machinery, electrical equipment, sails, masts, spars, rigging, and all other equipment normally required for the operation and maintenance of the vessel and situate on the scheduled vessel ,which would normally be sold with the vessel. This does not include the vessel's life raft, tender or dinghy unless the same as is declared on the declaration page, nor does it include any items being stored on premises other than onboard the scheduled vessel.

e) 'Trailer' refers to the insured vessel's trailer, used exclusively for that purpose.

f) Words of a masculine gender are deemed to encompass the female gender and vice versa. Words in the singular are deemed to encompass the plural and vice versa.

g) 'Navigational limits' means all waters as limited and shown on the declaration page unless mutually agreed by us and amended in writing.

h) 'Salvage charges' means those reasonable charges and expenses which are incurred by you if necessary to prevent damage, injury or loss of life or to prevent or minimise any further loss or damage covered by Section "A" of your insuring agreement.

i) 'Deductible', deductible is the first amount of any claim, which must be paid by you. If a deductible is applicable to any section of your insuring agreement the amount will be shown on the declaration page and this amount will be deducted from the amount payable on each admissible claim.

j) 'Bodily injury/property damage' means bodily injury or property damage occurring during the period of this insuring agreement arising from ownership and/or use of the vessel.

k) 'Seaworthy' means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the Hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the scheduled vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

l) 'Family' means any person related to you by blood, marriage or adoption, including wards and foster children.

m) 'Personal Property' means property purchased and owned by you, any covered person, any member of your family, provided that such property is situated on the vessel insured hereunder at the time of the loss, excluding any item that is deemed to be part of the Scheduled vessel.

ii)    'Race or speed trial' means any event involving speed and/or of a competitive nature, including, but not limited to, Regattas and/or Rallies. "Preparing for a race or speed trial," means any navigation of the vessel necessary to ensure eligibility of either you or your vessel to participate in a race or speed trial.

o)    'Named Windstorm' damage is damage relating to or resulting from a named windstorm or any numbered tropical weather pattern from the time the "named windstorm" or numbered tropical weather pattern impacts the area and until 72 hours later.

The area of the 'named windstorm' or tropical weather pattern is an area encompassed by a circle of radius not exceeding 150 nautical miles from the path of the storm's forward travel.

p)    'Divers' means any person using underwater artificial breathing apparatus, and/or submersible mechanical or electrical device including, but not limited to, Submarines, Diving Bells and/or Diving Suits.

q)    'Operating' means to navigate or to be in physical control of or to by at the helm of the scheduled vessel.

r)    'Sinking' means when the vessel has sunk as far as is physically possible for the vessel to sink, and is totally submerged underwater.

s)    'Abandoned' means where you have left the scheduled vessel, unattended, whether intentionally or otherwise, whether written notice of the same has been tendered or otherwise, and where there is no damage to the scheduled vessel that would give rise to a payable claim hereunder.

t)    'Constructive' or 'Compromised' Total Loss means where we determine that either the reasonable cost of repairs exceed the sum insured, or where the net value being the sum insured, less the residual value of the scheduled vessel, is exceeded by or in our opinion is likely to be exceeded by the reasonable cost of repairs.

## 2. INSURING AGREEMENT

This is a legally binding insurance contract between you and us, incorporating in full the application form signed by you. We will provide the insurance coverage described in this insuring agreement, in return for payment to us of the premium due and compliance by covered persons with the provisions, conditions and warranties of this insuring agreement.

## 3. Coverage A, Hull, Machinery, Equipment and Dinghy

If a sum insured is shown for Section A of the insuring agreement declaration page, we provide coverage for accidental physical loss of, or damage to the scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss insured and covered by this insuring agreement will be paid by us. These will be paid in addition to the sum insured under Sections A and F. Our maximum liability for these expenses is 50% of the sum insured under Section A of this insuring agreement less the deductible shown under Sections A and F.

We will pay salvage charges incurred by you in pursuance of 'your duties in the event of a loss' as set out in Section 10 of this insuring agreement, up to the limit of the sum insured under Section A of this insuring agreement less the deductible shown under Section A.

TLD/5/PPO

If the Insured vessel shall come into collision with any other ship or vessel and you, in consequence thereof, become legally liable to pay by way of damages to any other person or persons any amount not exceeding the agreed value of the vessel hereby insured, we will reimburse you such amount paid, up to the agreed value hereby insured, less the deductible shown under Section A.

In no case shall the foregoing clause extend to cover any amount you become legally liable to pay in respect of removal of obstructions under statutory powers or for injury or damages to Harbours, Wharves, Piers, Stages and similar structures consequent on such collisions, or in respect of the cargo or engagements of the Insured vessel or for loss of life or personal injury, or for loss of income, value or otherwise of any other vessel or person.

A deductible of 10% of the agreed hull value of the scheduled vessel and/or equipment shall apply to each theft loss, including constructive or total loss of the Scheduled vessel. However a deductible of 5% of the agreed hull value of the scheduled vessel shall apply to each theft loss, including constructive or total loss, provided the scheduled vessel is stored and/or moored in a commercial storage yard or marina that provides 24 hour security.

The deductible shown under Section A of the insuring agreement declaration page shall apply to each claim under the insuring agreement except for claims for actual and/or constructive total loss of the scheduled vessel, unless caused by theft when the deductible as referred to above shall apply or arising from a named windstorm when the deductible detailed below shall apply.

Loss or damage to the scheduled vessel arising from a Named or numbered windstorm shall be subject to a deductible which shall apply to all claims, including Actual and/or Constructive and/or Compromised Total Loss of the insured vessel, equal to double the deductible as shown on the declaration page under section A and/or F of the insuring agreement.

## Exclusions to Coverage A

Unless specifically agreed by us in writing and additional premium charged the following losses and or damages (whether incurred directly or indirectly) are not covered by this Insuring agreement:

a)      Damage sustained by scheduled vessel whilst being transported over land (whether by trailer or other method of conveyance approved by us in writing), more than 100 miles from the normal place of storage, as disclosed within your application form.

b)      Losses due to wear and tear, gradual deterioration, lack of maintenance, inherent vice, weathering, insects, mould, animal and marine life.

c)      Marring, scratching or denting of the hull and/or equipment of the scheduled vessel.

d)      Osmosis, blistering or electrolysis.

e)      The costs of replacing or repairing any item of equipment which has failed as a result of manufacturing defects or design defects, including latent defects.

f)      Unrepaired damage claims if the scheduled vessel is subsequently deemed by us to be an actual or constructive total loss, during the insuring agreement period.

g)      Losses caused directly or indirectly by ice or freezing.

h)      Loss or damage caused intentionally by you and or any member of your family

i)      Theft of the scheduled vessel's equipment whilst afloat unless there is visible evidence of forcible entry onto the scheduled vessel and removal of the same, made by tools, explosives, electricity or chemicals.

j)   Theft of the dinghy or tender and/or its outboard motor to the insured scheduled vessel unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

k)   Theft of the scheduled vessel and or its equipment whilst on a trailer/boatlift/hoist/dry storage rack unless the scheduled vessel is situate in a locked and fenced enclosure or marina and there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals

l)   Loss and/or damage to the dinghy and/or tender and/or its outboard motor whilst being towed behind the scheduled vessel or as a consequence of being towed behind the scheduled vessel.

m)  Damage to the scheduled vessel or tender caused by theft, and/or attempted theft unless there is visible evidence of forcible entry and or removal made by tools, explosives, electricity or chemicals.

n)   Your personal expenses or those of your family including but not limited to the, cost of your own labour, hotel or accommodation costs, car rental and communication costs.

o)   Losses caused by delay and or loss of use and or enjoyment of the scheduled vessel and/or its equipment.

p)   Any loss of value of the scheduled vessel and or its equipment as a result of repairs and or replacements being effected as a result of any claim hereunder.

q)   Damage existing prior to the inception date of this insuring agreement, whether you are aware of the same or otherwise.

r)   Loss or damage to the scheduled vessel and/or its equipment where you have abandoned the scheduled vessel.

s)   Damage and or loss to the scheduled vessel and/or its equipment caused by the officers, employees, agents, servants or independent contractors of any repair yard or marina.

t)   Loss of or damage to the scheduled vessel as a result of any repair yard lien being enforced, including but not restricted to the arrest or detention of the scheduled vessel by any repair yard.

## 4. Coverage B. Third Party Liability

If a sum insured is shown under Section B of the insuring agreement declaration page, we provide coverage for any sum or sums which you or any other covered person becomes legally liable to pay and shall pay as a result of ownership or operation of the scheduled vessel.

attorneys of our choice where we deem necessary. Our obligation to settle or defend all third party liability claims under this insuring agreement ends when the amount we pay for damages, investigation costs, legal expenses and removal of wreck equals the sum insured under this section of the insuring agreement.

The deductibles shown on the insuring agreement declaration page shall apply to each third party liability claim.

### Exclusions to Coverage B

Unless specifically agreed by us in writing and an additional premium paid, Liability cover is not provided for:

a)   Covered persons with regard to their liability to you, other covered persons, your spouse, other members of your family or persons who reside in your household.

b)  Your liability to other covered persons, your spouse, other members of your family or persons who reside in your household.

c)  Liability assumed by you under any contract or agreement.

d)  Liability which arises while the scheduled vessel is being transported on its own trailer or otherwise, except where the vessel is being hauled out or launched by a covered person.

e)  Fines or penalties imposed by any Government agency.

f)  Punitive or exemplary damages, however described.

g)  Liability due to pollution by any substance whether it be gradual, or sudden and accidental.

h)  Intentional acts.

i)  Bodily injury or death benefits which are required to be or are covered by any State or Federal Act or Statute or any other compensatory statute.

j)  Bodily injury or death benefit to any persons employed by a covered person, hired as crew or not.

k)  Liability to persons being towed, or to be towed, or having been towed in the water or in the air, from the time they commence to leave the scheduled vessel, until they are safely back on board, other than that provided under limited extension of liability for waterskiing detailed below.

l)  Liability to or for divers operating from the scheduled vessel, from the time they commence to leave the scheduled vessel, until they are safely back on board.

m)  Liability to fare paying passengers or passengers carried under charter.

n)  Liability for damage to any marine estuary, artificial or natural reef, living or dead coral or other marine organisms, caused by the vessel or its operators or passengers.

o)  Loss or damage to any other vessel caused by the operation of the scheduled vessel in so far as the same would have been covered under section 'A' of this insuring agreement.

p)  Liabilities, medical expenses, costs, fees or any other related expense whatsoever arising out of illness or injury in any way related to or caused by exposure to the sun or the suns rays either cumulatively or suddenly.

q)  Any claim arising from directly or indirectly caused by or associated with Human T-Cell Lymphotropic Virus type III (HILV II) or Lymphadenopathy Associated Virus (LAV) or the mutants derivatives or variations thereof or in any way related to Acquired Immune Deficiency Syndrome or any syndrome or condition of a similar kind howsoever it may be named.

### Coverage B, Water Skiing Coverage Limitation of Liability

Whilst the Insured vessel is being used for water skiing, the third party liability limits relating to this activity are reduced to:

| | |
|---|---|
| Property damage | US $10,000 |
| Bodily Injury | US $10,000 |
| Maximum any one incident | US $20,000 |

These limits shall apply from the time any person or persons begin to leave the scheduled vessel, or such activity commences, and will continue until the person or persons are safely back on board and

such activity ceases completely. All other terms, warranties, conditions, exclusions, remain unaltered and in effect save for exclusion k) above.

Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability.

## Coverage B. Extension to Include Crew Liability

Subject to our prior written agreement and your payment of an additional premium, we may at your request extend this insuring agreement to cover any sum or sums you become legally liable to pay and shall pay to hired crew resulting from injury, illness or death occurring whilst in the service of the scheduled vessel.

The maximum amount recoverable in respect of crew liability claims shall be the amount shown on the insuring agreement declaration page and shall form part of the maximum recoverable under Section B, Third Party Liability. All other terms, warranties, conditions, exclusions remain unaltered and in effect save for exclusion i) and j) above.

The deductible shown on the insuring agreement declaration page shall apply to each crew liability claim.

## Coverage B. Extension to Include Limited Pollution Coverage

It is hereby noted and agreed that in consideration of the additional premiums charged herein and notwithstanding exclusion (i) Coverage B Third Party Liability, we agree to indemnify you for reasonable costs incurred by you preventing or mitigating a pollution hazard or threat thereof resulting directly from damage to the scheduled vessel, where coverage is afforded under this insuring agreement, provided always that such pollution hazard or threat thereof:

a)      Was sudden, unintentional and unexpected by you.

b)      That the incident commenced during the period of this insuring agreement.

c)      It became known to you within 72 hours of its commencement.

d)      Was reported to us in writing not later than seven days after having become known to you.

e)      Was not a result of your want of due diligence of that or your managers, servants or agents to prevent or mitigate such pollution hazard or threat thereof.

The maximum amount recoverable under this section shall be US$50,000 less the policy deductible detailed under Section B. These reasonable expenses must be incurred within one year from the commencement of the incident giving rise to a claim hereunder. Any amount recoverable hereunder shall form part of the maximum amount recoverable under Section B Liability.

## 5. Coverage C. Medical Payments

If a sum insured is shown under Section C of the insuring agreement declaration page, we will pay reasonable medical, surgical or other evaporated necessary due to accidental bodily injury or death of third parties, incurred whilst boarding, leaving or onboard the scheduled vessel insured under this insuring agreement. These expenses must be incurred within one year from the date of the accident and will reduce any amount payable under Section B of this insuring agreement, arising from the same occurrence.

This coverage will be in excess over any other applicable insurance.

Any sum insured under this section is our maximum liability for all claims arising from any one event, regardless of the number of persons involved. Any payment made by us under this section is not an admission of liability for you or by us.

The deductible shown on the insuring agreement declarations page shall apply to each claim made under this section of the insuring agreement.

### Exclusions to Coverage C

We do not provide medical payment coverage for:

a)  Covered persons, their spouses, family or other persons who reside with them. Employees of covered persons or anyone that is or should be covered under a State or Federal Act or Statute.

b)  Responsibility assumed under any contract or agreement.

c)  Anyone injured whilst the scheduled vessel is being transported, hauled out or launched.

d)  Trespassers on the scheduled vessel.

e)  Anyone to or for whom benefits are payable under any State or Federal Workers Compensation Act including but not limited to State Workers Compensation Act, Federal Longshoreman's and Harbour Workers Compensation Act or Federal Jones Act.

## 6. Coverage D, Uninsured Boaters

If a sum insured is shown under Section D of the insuring agreement declaration page, coverage is provided in respect of sums which covered persons under this insuring agreement are legally entitled to recover from a third party vessel owner or operator, but which cannot be recovered either because they have no marine liability insurance and no realisable assets or they cannot be identified, such as a hit and run operator.

The deductible shown on the insuring agreement declaration page shall apply to each claim made under this section of the insuring agreement.

The sum insured in respect of this coverage is our maximum liability for all uninsured boater claims regardless of the number of people involved and the number of claims made.

### Exclusions to Coverage D

We do not provide coverage for:

a)  Claims settled without our prior written consent.

b)  Loss due to an uninsured vessel which is a Government vessel.

c)  Loss due to a vessel operated by a covered person.

d)  Loss where no physical damage to the scheduled vessel exists, evidencing collision.

## 7. Coverage E, Trailer

If a sum insured is shown under Section E of the insuring agreement declaration page, we provide coverage for accidental physical loss of or damage to the trailer provided it is used exclusively for the transportation of the scheduled vessel insured under this insuring agreement, up to the sum insured.

Claims will be paid up to the limit of the sum insured, on the basis of the actual cost of repairing or replacing the trailer with a trailer of like kind and value. Depreciation due to age and wear and tear will be taken into account in calculating claims under this insuring agreement.

Reasonable expenses incurred by you in attempting to minimise or mitigate a loss covered by this insuring agreement will be paid by us, whether successful or not. These will be paid in addition to the sum insured under Section E without application of the insuring agreement deductible. Our maximum liability for such expenses is 50% of the sum insured under Section E.

The deductible shown on the insuring agreement declaration page shall apply to each claim under this section of the insuring agreement.

**Exclusions to Coverage E**

a) Damages sustained by the trailer whilst the scheduled vessel is being transported over land, more than 100 miles from the normal place of storage, unless specifically agreed by us in writing and an additional premium paid.

b) Losses due to wear and tear, gradual deterioration, lack of maintenance, weathering, insects, mould animal or marine life.

c) Marring, scratching or denting.

d) Manufacturing defects or design defects, including latent defects.

e) Tyre damage.

f) Losses due to exceeding manufacturer's maximum load or speed specifications.

g) Your personal expenses or those of your family including but not limited to, cost of your own labour, hotel or accommodation costs, car rental, communication costs.

h) Theft of the trailer unless the trailer is stolen from a locked and fenced enclosure or marina and there is visible evidence of forcible entry or removal made with tools, explosives, electricity or chemicals.

## 8. Coverage F. Personal Property

If a sum insured is shown under Section F of the insuring agreement declaration page, we will cover direct loss or damage to personal property from any accidental cause, whilst property is onboard, being loaded onto, or unloaded from the scheduled vessel. Our maximum liability in respect of all claims arising from one event is the amount of the sum insured and our maximum liability for any one item, pair or set is US$3,000.

Fishing gear and tackle, unless permanently affixed to the scheduled vessel, is deemed personal property.

Claims will be settled on the basis of actual cash value of personal property, less the insuring agreement deductible and any claim made hereunder shall be adjusted in accordance with general principles of average. Where the sum insured is less than the overall actual cash value of the covered property situate on the scheduled vessel, we will only pay claims in the ratio that such sum insured bears to the overall cash value of the covered property situate on the scheduled vessel at the time of the covered loss.

**Exclusion to Coverage F**

a) Money, jewellery, watches, travellers cheques or any form of paper of value, furs, china, glass, silverware, antiques, collectibles or computer software.

b) Fishing gear or tackle which is permanently affixed to the scheduled vessel, unless the scheduled vessel insured hereunder shall become an actual or constructive total loss, due to a covered loss.

TLD/S/PPO

We will not cover losses due to:

a) Wear and tear, gradual deterioration, inherent vice, corrosion, damage due to changes in humidity or temperature or mechanical or electrical failure.

b) Breakage of articles of a brittle nature unless caused by the scheduled vessel being stranded, sunk, burnt, on fire, or in collision or by stress of weather, burglars or thieves.

c) Loss of water-skis or diving equipment, unless as a result of fire, or theft following forcible entry, or a total loss of the scheduled vessel.

d) Theft and or damage caused by theft unless there is visible evidence of forcible entry and removal made by tools, explosives, electricity or chemicals.

## 9. General Conditions & Warranties

a) It is warranted that the scheduled vessel shall be used solely for private and pleasure purposes, and will not be used for Charter, hire lease or any other commercial activity.

b) It is warranted that the scheduled vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception

c) This insuring agreement incorporates in full your application for insurance and, together with any endorsements issued herein, constitutes the entire contract between us. At your request, various provisions of this insuring agreement may be varied by us but only by our prior written agreement.

d) This insuring agreement does not cover any loss or damage which occurs after its expiration. However, if you have been at sea in the scheduled vessel for at least 24 hours and this insuring agreement expires other than due to cancellation, you may renew or reinstate the insuring agreement at such time as the scheduled vessel arrives safely at its next port of call and for a further 24 hours provided that you contact us during that 24 hours and make the necessary arrangements as may be required by us to renew or reinstate the insuring agreement.

e) This insuring agreement may be cancelled by either you or us at any time, subject to 10 days prior written notice. If it is cancelled by us, we will pay you a pro rata return of premium. If it is cancelled by you, we shall pay you a short rate return of premium calculated at pro rata less 10%. However if a reduced premium has been charged in consideration of a period of lay up or an earned premium in respect of an agreed extended voyage, the return premium will be calculated based upon the actual activity of the scheduled vessel, and then pro rata or short rate applied. Cancellations due to sale of the scheduled vessel or non-payment of premium, or non-payment of premium instalment to a premium financier are deemed cancellations by you. All policy fees are deemed earned at the inception of the policy.

f) If you sell or pledge the scheduled vessel or otherwise transfer ownership in part or in full, or give up possession of the scheduled vessel, whether actual or otherwise, this insuring agreement is immediately cancelled by your action unless you have our prior written agreement to the contrary.

g) In the event of an actual and/or constructive and/or compromised total loss under this insuring agreement the annual premium is deemed fully earned by us.

h) If you have used a Broker to effect coverage, it is hereby agreed that your brokers or any substituted brokers (whether surplus line approved or otherwise), shall be deemed to be exclusively the agents of you and not of us in any and all matters relating to, connected with or affecting this insurance. Any notice given or mailed by or on behalf of us to the said brokers in connection with or affecting this insurance, or its cancellation, shall be deemed to have been delivered to you.

i)    We need not accept or pay for any property abandoned by you. At our option however we are entitled to the salvage value of any property or equipment where we have settled a claim in full under this insuring agreement, in respect of such property or equipment.

j)    It is warranted that covered persons must at all times comply with all laws and regulations, governing the use and or operation of the scheduled vessel.

k)    If the scheduled vessel is fitted with fire extinguishing equipment, then it is warranted that such equipment is properly installed and is maintained in good working order. This includes the weighing of tanks once a year, certification/tagging and recharging as necessary.

l)    If you give up your rights or our rights to recover damages from anyone who may be liable to you, denying us the benefit of the right of recovery, payment of any admissible loss under this insuring agreement shall be reduced by the amount we have been denied.

m)    This contract is null and void in the event of non-disclosure or misrepresentation of a fact or circumstance material to our acceptance or continuance of this insurance. No action or inaction by us shall be deemed a waiver of this provision.

n)    We will not pay for any loss resulting from i) radioactive contamination, or nuclear reaction ii) pollution or contamination by any substance (other than to the extent provided for under extension of Section B Limited Pollution Coverage) iii) War declared or not, civil war, insurrection, rebellion, revolution or the consequences of any of these. iv) Capture, seizure, arrest, restraint or detainment by any government power or authority, lawful or otherwise.

o)    If we take steps to protect damaged or endangered property, this does not constitute acceptance of abandonment of that property by us or acceptance of any claim as may be covered hereunder.

p)    If any covered person has other insurance against risks covered by this insuring agreement, then this insurance shall be in excess over all other valid and collectible insurances.

q)    Unless we specifically agree in writing, and the appropriate endorsement is issued, this insurance does not cover loss or liability incurred during a race or speed trial or during preparation for a race or speed trial.

r)    Unless we agree in writing to the contrary, if we request a survey of the scheduled vessel then it is warranted that such survey is in existence prior to the effective date of this insurance and a copy of the same must be received by us within 30 days of the effective date of this agreement. If the survey makes any recommendations with respect to the scheduled vessel, then it is warranted that all such recommendations are completed prior to any loss giving rise to any claim hereunder, by skilled workmen using fit and proper materials and that either.

1) The surveyor who carried out the survey certifies in writing that all recommendations have been completed to his (the surveyors) satisfaction prior to any loss and/or claim

Or,

2) The workmen/repair yard that carried out the said work and/or recommendations certifies in writing that all recommendations have been completed prior to any loss and/or claim. Failure to comply with this warranty will void this agreement from inception.

s)    In no event shall this insurance cover any loss, damage, expense or liability of whatever nature, which might otherwise be recoverable under this insuring agreement arising out of or in any way connected with, whether directly or indirectly, the use or operation of any computer, computer system, computer software, programme or process or any electronic system where any such loss, damage, expense or liability arises directly or indirectly, as a consequence of a) the data change to the year 2000 or any other date change and/or b) any change or modification of or to any such computer, computer system, computer software, programme or process or any electronic system in relation to any such date change.

TLD/S/PPO                                                                 Page 10 of 13

t)  The scheduled vessel shall be valued at the agreed valuation shown on the declaration page or on any endorsement thereto issued by us. However the following items are subject to payment on the basis of depreciated cash value less the applicable deductible. Depreciated cash value means replacement cost less the annual percentage factor of depreciation shown as follows;

i)  Internal and/or external paints, finishes, gelcoat or other covering - 10% per annum
ii)  Bottom paint including but not limited to anti-foul or barrier coat finishes- 50% per annum
iii)  Sails, standing and running rigging - 12.5% per annum
iv)  Internal and/or external protective covers, canvas, vinyl and other materials - 20% per annum
v)  Internal and/or external upholstery, fabrics, wall coverings, carpets and rugs - 10% per annum
vi)  Machinery including but not limited to engines, generators, water makers and waste systems - 7% per annum
vii)  Outboard Motors - 20% per annum
viii)  Outdrives, propellers, shafts, rudders, struts, couplings, trim tabs, stabilisers - 20% per annum
ix)  Batteries and solar charging panels - 20% per annum
x)  Electrical equipment including but not limited to internal and external appliances, winches, pump motors and electric deck gear - 10% per annum.
xi)  Mast and spars – 5% per annum.
xii)  Stanchions and lifelines – 10% per annum.
xiii)  Inflatable, tenders or dinghies – 12.5 % per annum.
xiv)  Hard FRP, composites, aluminium or wood tenders or dinghies – 10% per annum.

The cost of dry docking and/or lay-days shall be adjusted in accordance with the required time to complete the repair of covered losses.

However in no event shall the depreciated value be less than 20% of the replacement cost. Reasonable labour costs to repair or replace the damaged items following a recoverable claim shall be payable in full subject always to the applicable deductible.

If the hull is made in whole or in part of plywood, fibreglass, metal or other material of similar nature its repair shall be made by applying suitable patches to the damaged hull area in accordance with generally accepted good repair practice. This insuring agreement does not cover the cost or expense of painting or impregnating colour beyond the immediate damaged area or areas.

We have the right to settle any physical loss or damage claim under this insuring agreement, either by making payment to you of the estimated loss agreed between you and us, or by making repairs or replacements, like with like, for your lost or damaged property.

u)  No suit or action on this Insuring agreement for the recovery of any claim shall be sustainable in any court of law or equity unless the Assured shall have fully complied with all the requirements of this Insuring agreement, nor unless commenced within one (1) year from the date of the happening or the occurrence out of which the claim arose, provided that where such limitation of time is prohibited by the laws of the state wherein this Insuring agreement is issued, then, and in that event, no suit or action under this Insuring agreement shall be sustainable unless commenced within the shortest limitations permitted under the laws of such state.

v)  Where a lay up 'laid up period' has been specified within the declaration page, it is warranted that the scheduled vessel will not be used, navigated or utilised, in any manner whatsoever, during the dates so specified.  "Use" includes, but is not restricted to, living on board the scheduled vessel.

w)  It is warranted that the scheduled vessel will be operated only by covered persons.

x)  Where you are entitled to limit your liability to third parties the maximum recoverable under section 4 coverage B, third party liability herein, is the amount you become legally liable to pay or the limit of coverage shown under "Section B" of the insuring agreement declaration page, whichever is the lesser amount.

y)  Where two or more insurers subscribe to this insurance their obligations are several and not joint and are limited solely to the extent of their individual subscriptions. The insurers in such circumstances are not responsible for the subscription of any co subscribing insurer who for any reason does not satisfy all or part of its obligations hereunder.

## 10. Your Duties In The Event Of A Loss

1)  Immediately take all possible steps to minimise the loss and protect the scheduled vessel from further loss.  Failure to do so may invalidate your insurance coverage or reduce the amount of any claim hereunder.

2)  Within 14 days of a loss giving rise to any claim hereunder give us written notification of the loss and its circumstances.

3)  Comply with any reasonable request made of you, by us with regard to the loss.

4)  Advise the Police, Coast Guard, or any appropriate authority of the loss and its circumstances.

5)  Give us an opportunity to examine the damaged property before it is repaired or discarded.

6)  Submit a claim form and/or statement describing the loss, together with two estimates of repair cost and/or records to substantiate the amount of the loss.

7)  Neither assume obligation, nor admit liability without our written permission to do so.

8)  Immediately forward to us any legal papers or notices received in connection with the loss.

9)  Cooperate with us in the investigation, defence or settlement of any loss and agree to be examined under oath if we so request.

10)  Allow examination by physicians of our choice.

11)  Assist us in obtaining copies of medical records and reports.

12)  Give us a notarised statement or statutory declaration if we so request.

13)  Give us a proof of loss and discharge of liability once the amount of the claim under this insuring agreement has been agreed with you.

14)  Preserve any right of recovery from others. When we pay a loss, your right to recover becomes ours up to the amount of our payment together with any legal fees and expenses You must also co-operate with us to recover the losses we may pay. Any amounts recovered from others belong to us up to the amount of our payment together with any legal fees and expenses.

## 11. Service Of Suit Clause

It is agreed that in the event of the failure of the Underwriters severally subscribed to this insurance ('The Underwriters') to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.

Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver

TLD/S/PPO

of the Underwriters right to remove an action to the United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any State therein.
Subject to the Underwriter's rights set forth above:

a)     It is further agreed that the Assured may serve process upon any senior partner in the firm of:

LeBoeuf, Lamb, Greene & MacRae
125 West 55th Street
New York, NY 10019-5389

and that in any suit instituted against any one of them upon this contract the Underwriters will abide by the final decision of the Court or any Appellate Court in the event of an appeal.

b)     The above named are authorised and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give written undertaking to the Assured that they will enter a general appearance upon the Underwriter's behalf in the event such a suit shall be instituted.

c)     The right of the Assured to bring suit as provided herein shall be limited to a suit brought in its own name and for its own account. For the purpose of suit as herein provided the word Assured includes any mortgage under a ship mortgage which is specifically named as a loss payee in this insurance and any person succeeding to the rights of any such mortgage.

d)     Further, pursuant to any Statute of any State, Territory or District of the United States of America which makes provision therefore, Underwriters hereby designate the Superintendent, Commissioner or Directors of Insurance or any other officer specified for that purpose in the statute, or his successor or successors in office (The Officer) as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named as the person to whom the Officer is authorised to mail such process or true copy thereof.

Clause 11 above is subject, in all respects to clause 12 hereafter.

## 12. CHOICE OF LAW

It is hereby agreed that any dispute arising hereunder shall be adjudicated according to well established, entrenched principles and precedents of substantive United States Federal Admiralty law and practice but where no such well established, entrenched precedent exists, this insuring agreement is subject to the substantive laws of the state of New York.

This wording is the property of T L Dallas (Special Risks) Ltd and may not be reproduced wholly or in part by any means whatsoever without the express written permission of T L Dallas (Special Risks) Ltd. T L Dallas (Special Risks) Ltd will seek legal redress from any person or persons found to have infringed their copyright.

# EXHIBIT "B"



**TLDallas**
*Insurance since 1919*

Insurance Brokers
Marine Underwriting Agents
Credit Insurance Specialists

T L Dallas (Special Risks) Ltd
5-6 Dalesway House
South Hawksworth Street
Ilkley LS29 9LA

Telephone +44 (0)1943 811000
Fax +44 (0)1943 601854/601875

16 February 2007

**By email and International Mail**

Marlene & Rick Bartlett
15850 North Thompson Peak Pkwy #1105
Scottsdale, AZ  85260

Re:    Assured:        Marlene & Richard Bartlett
       Vessel:         *STARLET*
       Date of Loss:   20 November 2006
       TL Dallas Ref:  200/658/72833

Dear Mr. and Ms. Bartlett:

We represent Great Lakes Reinsurance(UK)PLC ("Great LakeS"), insurers to your vessel "Starlet" , as underwriting agents and claims managers ("Underwriters). Underwriters have had an opportunity to investigate the incident giving rise to your claim and the terms, conditions, warranties and exclusions of the policy that we issued to you under policy No. 200/658/72833 (the "Policy"). The vessel was lost only after you abandoned the vessel . The Policy excludes coverage for damage sustained after the Vessel has been abandoned. Thus, the Policy does not provide coverage for the loss.

Additionally, you warranted in the Policy that the Vessel would remain seaworthy at all times. The Policy defines the term "seaworthy" to include the provision of an adequate and experienced crew. We have concluded that the crew was inadequate prior to the loss. Underwriters reserve their rights to deny coverage on this issue.

Finally, the Policy's navigational warranty prohibited the Vessel from entering Columbian waters. During the application process, you represented to Underwriters that you would not travel into Columbian waters. Your policy is subject to the duty of the utmost good faith , known as "uberrimae fidei" , this duty is also strengthened by your policy containing the a term to the effect that the Policy is void *ab initio*. Underwriters are hereby tendering the premium in full and rescinding the Policy.

We hereby set out the details of what our investigation has revealed ,

## I.    BACKGROUND

*STARLET* is a 2003 Catalina "470" fiberglass sloop which was insured at an agreed value of $332,000.

Member of the British Insurance
Brokers' Association

Registered Number 952756
T.L Dallas (Special Risks) Ltd
is authorised and regulated

Marlene and Rick Bartlett
16 February 2007
Page 2

In October 2004, you acquired the Vessel for a purchase price of $332,000. Shortly thereafter, you commenced an extended cruise from California to Florida by way of the Panama Canal. The Vessel's crew initially consisted only of Richard Bartlett and Marlene Bartlett (the "Assureds"). The voyage proceeded down the west coast of Mexico and Central America to Panama, through the Panama Canal, to Columbia, back to Panama and then to the Columbian Caribbean island from which the vessel was continuing to Florida, with a first intermediate port call planned for the Honduran island of Guanaja. During the voyage, you took on two crewmembers. Neither of these crewmembers had sufficient experience to sail or man the Vessel.

After entering the Caribbean Sea, the Vessel began experiencing a series of mechanical and electrical problems, including sporadic failures of the depth sounder and navigation electronics and the auto-pilot interface. During heavy weather, the Vessel's instrumentation would occasionally fail or malfunction, subsequently thought to be the probable result of exposed, wetted electronic cabling and connectors. The Vessel's navigation and compass lights would sometimes fail, thus depriving the nighttime helmsman of the ability to visually sight the compass rose. The failure of both the autopilot interface and compass lights at night created an inconvenient navigation problem that required two people to man the helm, one to manually steer the vessel and the other to periodically hold a flash light to illuminate the compass rose.

During the voyage from Panama to the Columbian islands, the Vessel's laptop computer was intentionally disconnected during a severe thunderstorm. When it was re-powered after the thunderstorm, the unit was found inoperative, which resulted in the loss of the ability to obtain current weather updates, email and the backup navigation system. There were also failures with one of the satellite telephone systems and the Vessel's generator only operated sporadically. However, the Vessel was equipped with redundant global positioning satellites and two satellite telephones. You planned to fix to the multiple mechanical and electronic failures once the Vessel arrived in Florida. These multiple failures did not adversely affect the Vessel's sea keeping abilities, but did cause the Vessel's passage to be more difficult, labor consuming and inconvenient.

At approximately 1400 local time, on November 20, 2006, you and your crew abandoned the Vessel in heavy weather by boarding the tanker *S/V STOLT TAURUS* ("*STOLT*"). *STOLT* was dispatched by the U.S. Coast Guard to *STARLET*'s position in the northwest Caribbean Sea, approximately 40 miles north-north east of Cabo Gracias a Dios at the Nicaraguan-Honduran border. Prior to the abandonment, the Assureds and crewmen from the *STOLT* attempted to anchor the Vessel in the heavy seas and 90 feet of water. The Assureds departed the location aboard *STOLT* to Costa Rica, leaving the Vessel anchored and unmanned in the open ocean.

You planned to return to retrieve the Vessel, which you assumed was anchored, once the weather cleared. However, it was three days before you could disembark the *STOLT* and return to the area. You hired a plane in Costa Rica, but was unable to reach the area where the Vessel was anchored because of continuing bad weather. You rented a second plane and found the Vessel grounded on the beach in Honduras. When you over flew the Vessel, you saw 10 to 15 local people stripping the Vessel.

Marlene and Rick Bartlett
16 February 2007
Page 3

## II.     PERTINENT POLICY PROVISIONS

    *STARLET* was issued with Great Lakes Policy No. 200/658/72833 providing $332,000 in hull coverage for the policy period, February 10, 2006 to February 10, 2007.

    The Policy provides:

> ... we provide coverage for accidental physical loss of, or damage to the scheduled vessel which occurs during the period of this insuring agreement and within the limits set out in the insuring agreement declarations page, subject to the insuring agreement provisions, conditions, warranties, deductibles and exclusions.

    The Policy excludes from coverage:

> s)    Loss or damage to the scheduled vessel and/or its equipment where you have abandoned the scheduled vessel.

    The Policy defines "abandoned" to mean:

> ...where you have left the scheduled vessel, unattended, whether intentionally or otherwise, whether written notice of the same has been tendered or otherwise, and where there is no damage that would give rise to a payable claim hereunder.

    Moreover, as a condition of coverage, the Policy requires the assured to warrant:

> (b)    It is warranted that the scheduled vessel is seaworthy at all times during the duration of this insuring agreement. Breach of this warranty will void this insuring agreement from its inception.

    The Policy defines "seaworthy" as:

> "Seaworthy" means fit for the Scheduled Vessel's intended purpose. Seaworthiness applies not only to the physical condition of the Hull, but to all its parts, equipment and gear and includes the responsibility of assigning an adequate crew. For the scheduled vessel to be seaworthy, it and its crew must be reasonably proper and suitable for its intended use.

    The Policy also provides:

> i)    We need not accept or pay for any property abandoned by you.

    Finally, the Policy's trading warranty restricts coverage to:

Marlene and Rick Bartlett
16 February 2007
Page 4

> From California to Florida and East Coast USA, via West Coast USA,
> West Coast Central America, Panama Canal and the Caribbean
> (excluding Cuba, Colombia and Haiti)- Not to exceed 250 miles
> offshore.

**III.    POLICY ANALYSIS**

    **A.    Coverage Is Precluded Because The Vessel Was Abandoned**

The Policy excludes all damage where you have abandoned the Vessel. The Policy defines "abandoned" to mean:

> ... where you have left the scheduled vessel, unattended, whether
> intentionally or otherwise, whether written notice of the same has been
> tendered or otherwise, and where there is no damage that would give rise
> to a payable claim hereunder.

Moreover, the Policy provides that Underwriters will not pay for abandoned property. Clearly, the Vessel was abandoned on November 20, 2006 and the damage to the Vessel resulted from that abandonment. When your agent originally reported the loss he referred the vessel as having been abandoned by you. Therefore, the Policy does not provide coverage for the loss.

    **B.    The Vessel Was In Unseaworthy Condition**

The Policy requires the Vessel to be seaworthy at all times. The Policy defines seaworthy to mean:

> ...fit for the Scheduled Vessel's intended purpose. Seaworthiness applies
> not only to the physical condition of the Hull, but to all its parts,
> equipment and gear and includes the responsibility of assigning an
> adequate crew. For the scheduled vessel to be seaworthy, **it and its crew**
> **must be reasonably proper and suitable for its intended use.**(made bold for
> emphasis)

The term "seaworthy" includes the assignment of adequate crew to the Vessel. Here, the Vessel was manned only by the Assureds at the start of the voyage. During the voyage, the Assureds picked up two crewmembers that were totally inexperienced. The inexperience of the crew was a major factor in the decision to abandon the Vessel. Moreover, following your abandonment, the Vessel was left unmanned and therefore was unseaworthy. Underwriters reserve their rights on this issue.

    **C.    The Vessel Was Taken Outside The Trading Warranty**

By accepting the Policy, you represented that the Vessel would not enter Columbian waters. Moreover, the Policy's trading warranty prohibited you from entering Columbian

Marlene and Rick Bartlett
16 February 2007
Page 5

waters. It is undisputed that you took the Vessel into Columbian waters. Therefore, you made material misrepresentations to Underwriters that would entitle them to render the Policy void *ab initio*. You also breached the trading warranty. Underwriters hereby are tending the premium in full and declare the Policy rescinded.

## IV.    CONCLUSION

There may be other Policy terms, warranties ,conditions and exclusions other than those detailed above that limit, if not to preclude coverage for the loss. Underwriters reserve their right to deny any indemnity obligation based on all coverage provisions in the Policy, case or statutory law, and public policy.

This letter is not intended to address each and every provision of the Policy that may apply to the present circumstances. Instead, it is only intended to address the provisions of the Policy that appear pertinent at this time based on all of the facts currently known to Underwriters. Underwriters reserve their right to limit or deny coverage for the loss based upon any other terms, conditions, exclusions or other provisions contained in the Policy, as well as under statutory or case law. None of the acts of Underwriters' agents, attorneys or employees should be construed as a waiver or estoppel by Underwriters.

If you disagree with any aspect of Underwriters' coverage position as set forth herein or have additional information you believe supports your claim for coverage, please immediately provide such information to us in writing so that we can have Underwriters review the position.

If you do not agree with this decision, you may request to have the matter reviewed by the Department of Insurance. They can be contacted at:

> California Department of Insurance
> Claims Bureau
> 300 South Spring Street
> Los Angeles, CA  90013
> (800) 927-4357

If you have any questions about this, please feel free to contact me.

Yours Sincerely,

Alexander Mark Thomas LLB(Hons)
Director & Marine Claims Manager

# SUMMONS
## (CITACION JUDICIAL)

**SUM-100**

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
DOUGLAS K. SMITH MARINE INSURANCE SERVICES, INC.; THE
GREAT LAKES REINSURANCE COMPANY, and DOES 1 through
30,

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*
CIVIL BUSINESS OFFICE'S
CENTRAL DIVISION.

2007 NOV 19 A H: 48

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
RICHARD BARTLETT and MARLENE BARTLETT,

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted puede usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO<br>220 West Broadway<br><br>San Diego, CA 92101<br>Central Division | CASE NUMBER:<br>*(Número del Caso):*<br>37-2007-00082030-CU-IC-CTL |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Roger E. Hawkins (Bar No. 44315)        (213) 622-5600  (213) 622-5623
HAWKINS, PRATA & DALEY LLP
707 Wilshire Boulevard, Suite 1825
Los Angeles, California 90017

DATE: NOV 16 2007        Clerk, by **D. JOHNSON**, Deputy
*(Fecha)*        *(Secretario)*        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* THE GREAT LAKES REINSURANCE COMPANY

under: ☒ CCP 416.10 (corporation)        ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)        ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)        ☐ CCP 416.90 (authorized person)
☐ other *(specify):*
4. ☐ by personal delivery on *(date):* 02/11/08

[SEAL]

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]

**SUMMONS**

Legal
Solutions
Plus

Code of Civil Procedure §§ 412.20, 465

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 148175    — SH**

**February 28, 2008
11:55:08**

**Civ Fil Non-Pris**
USAO #.: 08CV0377
Judge..: JOHN A HOUSTON
Amount.:                    $350.00 CK
Check#.: BC 66911

**Total—> $350.00**

FROM: BARTLETT V. GREAT LAKES
REINSURANCE

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Richard Bartlett and Marlene Bartlett

**(b)** County of Residence of First Listed Plaintiff   Maricopa County, AZ
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Hawkins, Prata & Daley, 707 Wilshire Blvd., Suite 1825, Los Angeles, CA 90017, (213) 622-5600

## DEFENDANTS
08 FEB 28  AM 11: 53

Great Lakes Reinsurance (UK) PLC; Douglas K. Smith Marine Insurance Services, Inc.  CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.                                        DEPUTY

08 CV 0377 JAH CAB

Attorneys (If Known)
Gordon & Rees LLP, 101 West Broadway, Suite 2000, San Diego, CA, 92101, (619) 696-6700

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☐ 2  U.S. Government Defendant

☐ 3  Federal Question
(U.S. Government Not a Party)

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)                    and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | Habeas Corpus: | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☐ 1 Original Proceeding  ☒ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify)  ☐ 6 Multidistrict Litigation  ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 USC sections 1332, 1441, and 1446
Brief description of cause:
Removal Based on Diversity

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE                           DOCKET NUMBER

DATE
02/27/2008

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT #  148175   AMOUNT  $350   APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

SEI 2/28/08

CR